

| | | |
|---|---|---|
| **HON. SYLVIA O. HINDS-RADIX**<br>*Corporation Counsel* | **THE CITY OF NEW YORK**<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NEW YORK 10007 | **MICHAEL PESIN-VIROVETS**<br>*Senior Counsel*<br>mpvirove@law.nyc.gov<br>Phone: (212) 356-2617 |

May 25, 2023

**VIA ECF**
Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Payamps v. the City of New York et al.,
                22-CV-0563 (AMD) (VMS)

Your Honor:

      I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney assigned to the defense in the above-referenced matter. In response to plaintiff's 320 Requests for Admissions (hereinafter "RFAs") dated April 18, 2023, and, pursuant to the Court's Order dated May 25, 2023, Defendants respectfully request that the Court issue a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure (hereinafter "FRCP") relieving them of the obligation to answer plaintiff's RFAs.

      As the Court is aware, on May 18, 2023, Defendants submitted a request to the Your Honor, requesting a week extension of time to respond to Plaintiff's April 18, 2023 RFAs. (*See* Docket Entry No. 49). Pursuant to the Court's May 25, 2023 Order, Your Honor directed Defendants to respond to the RFAs by today. Accordingly, and for the reasons set forth below, Defendants respectfully submit the instant motion for a protective order in response to Plaintiff's 320 RFAs on the grounds that responding to same will cause an undue burden. See Carver v. Bank of N.Y. Mellon, 15-CV-10180 (JPO) (JLC), 2018 U.S. Dist. LEXIS 164400, at *3-4 (S.D.N.Y. Sep. 25, 2018) (holding that options for responding to requests to admit can include, among other ways, requesting an extension of time and moving for a protective order).

**Background:**

By way of background, pursuant to the Court's April 11, 2023 Order, defendants were to continue to attempt identify John Does allegedly involved in the incident which forms the basis for plaintiff's lawsuit by May 1, 2023. Plaintiff's complaint identifies seven (7) John Does and alleges that the John Doe defendants 2-7 assaulted and beat the plaintiff. *See* Complaint at ¶¶ 48-52. While plaintiff alleges that he was assaulted by a number of the John Doe officers, defendants deny such allegations.

As discussed in the April 11, 2023 conference, the Civilian Complaint Review Board (hereinafter "CCRB") investigation related to plaintiff's underlying arrest on June 4, 2020 identified six (6) subject officers and an additional seventeen (17) witness officers (23 total officers) who were allegedly present for plaintiff's arrest. Since at least January 23, 2023, when defendants produced to plaintiff a copy of the referenced CCRB file, plaintiff has been in possession of the names of those 23 officers. Moreover, since the April 11, 2023 conference, the undersigned has been conducting interviews of each of the officers and as of today, has interviewed twenty-four (24) separate officers. As indicated above and further herein, the undersigned has been diligently attempting to identify the police officers present at the incident and who are depicted in the photographs from the incident and on the video. It would be impossible for defendants to identify specific officers who "assaulted" the plaintiff as defendants deny such allegations.

On April 18, 2023, plaintiff served three hundred and twenty (320) RFAs – all of which request defendants to confirm the involvement of twenty (20) of the twenty-three (23) officers identified by the CCRB in plaintiff's arrest. Moreover, plaintiff's RFAs are only directed at non-party witnesses as none of the officers who are referenced in plaintiff's RFAs are currently defendants in this action. On May 17, 2023, as a result of the undersigned's continued investigation, defendants identified to plaintiff the names of ten (10) officers, nine of which were previously disclosed in the CCRB file, that this Office had been able to identify as being in depicted in the photographs and the video capturing plaintiff's arrest. On May 18, 2023, defendants requested a one-week enlargement of time, until May 25, 2023, to respond to plaintiff's RFAs, explaining in part that due to the sheer number of RFAs, and the undersigned's limited availability due to other professional commitments, including a trial that took place from May 10, 2023 to May 15, 2023, of which the undersigned was counsel, defendants would need additional time to adequately prepare a response. (See ECF No. 49). The following day, on May 19, 2023, defendants specifically identified to plaintiff *where in the photos produced* the ten (10) officers identified on May 17th are depicted.[1]

For the reasons set forth below, defendants respectfully request that the Court issue a protective order relieving defendants of the obligation to answer plaintiff's unduly burdensome 320 RFAs.

---

[1] Specifically, Defendants re-produced the photographs that are part of the CCRB file and also produced still images of videos from that file, and identified the 10 officers in each of those images.

**Argument:**

As a preliminary matter, it is well settled that a party answering a properly phrased request for admission must make a "'reasonable inquiry' of 'information known or readily obtainable by him' that allows him to fairly admit or deny the request." See T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., 174 F.R.D. 38, 43 (S.D.N.Y. 1997)(citing Fed. R. Civ. P. 36(a) and Advisory Committee Notes to 1970 amendment). "What constitutes 'reasonable inquiry' and what material is 'readily obtainable' is a relative matter that depends upon the facts of each case and is 'committed to the sounds discretion of the motion court.'" See T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., at 40; see also Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 374 (S.D.N.Y. 1989) (internal citations omitted). A "reasonable inquiry" is generally "limited to review and inquiry of those persons and documents that are within the responding party's control." See T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., at 40.

Furthermore, courts in this Circuit have found that "reasonable inquiry" does not generally extend to non-parties. See Bernstein v. Principal Life Ins. Co., No. 09 CIV. 4925, 2010 U.S. Dist. LEXIS 127733, 2010 WL 4922093, at *4 (S.D.N.Y. Dec. 2, 2010); see generally Diederich v. Dep't of Army, 132 F.R.D. 614, 620 (S.D.N.Y. 1990)("The requirement of 'reasonable inquiry' does not generally extend to third parties, absent sworn deposition testimony of such third party."); Dubin v. E.F. Hutton Grp. Inc., 125 F.R.D. 372, 374 (S.D.N.Y. 1989) (denying motion to compel and recognizing that "plaintiffs have not brought to this Court's attention any authority demonstrating that a party's obligation to make 'reasonable inquiry' entails seeking information from a third party absent sworn deposition testimony."). Here, plaintiff's 320 RFAs all seek admissions from non-party witnesses. At this juncture, and on this ground alone, defendants should not be obligated to respond to plaintiff's unduly burdensome requests.

In addition, a protective order is appropriate here because plaintiff's 320 RFAs demonstrate the kind of undue burden that Rule 26 explicitly prohibits. Rule 26(c)(1)(C) allows the Court, for good cause, to "issue an order to protect a party or person from …undue burden or expense, including one or more of the following:… prescribing a discovery method other than the one selected by the party seeking discovery…." F.R.C.P. 26(c)(1)(C). "Good cause for the issuance of a protective order is established when [the party seeking the protective order] is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order." Bailey v. City of New York, No. 14 Civ. 2091 (JBW) (VMS), 2015 U.S. Dist. LEXIS 97871, at *23 (E.D.N.Y. Jul. 29, 2015). Good cause has been established when there is a "substantial risk for false positive identifications that could result in annoyance, embarrassment, oppression, or undue burden or expense." Strike 3 Holdings, LLC v. Doe, No. 19-CV-00945 (NGG) (RLM), 2019 U.S. Dist. LEXIS 168739, at *6 (E.D.N.Y. Sept. 27, 2019). Here, there is good cause for the issuance of a protective order because the sheer number of responses defendants would have to prepare creates an undue burden.

Indeed, Judge Gorenstein recently ruled on the issue of excessive RFAs in the consolidated protest cases, which were served by the same attorneys. There, defendants were served with almost 300 requests to admit, which, as Judge Gorenstein acknowledged, would "necessarily demand significant resources to respond to." See Order dated January 12, 2023 In Re: New York City Policing During Summer 2020 Demonstrations, No. 20 Civ. 8924 (CM) (GWG). Furthermore, as

Judge Gorenstein noted, RFAs are better utilized at the *conclusion of discovery* when the parties will have more information about what is contested and what is admitted. As such, RFAs are "less useful when propounded in the middle of discovery," as is the case here. Id. If Judge Gorenstein concluded that less than 300 RFAs would require significant resources to respond to in discovery of the consolidated protest cases, then certainly in this case, which involves one plaintiff at one protest, 320 RFAs is unduly burdensome for defendants and a protective order is appropriate.

Additionally, the FRCP provides, in pertinent part, that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a). "Requests for Admission are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." Henry v. Champlain Enters., Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Indeed, "RFAs are not a discovery device; they are to narrow issues known to the requesting party." See Pasternak v. Dow Kim, No. 10 Civ. 5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) ("RFAs are not a discovery device at all, since [they] presuppose[] that the party proceeding under [FRCP] 36 knows the facts . . . and merely wishes its opponent to concede their genuineness.") (internal quotations & citations omitted). Here, it is clear that plaintiff is impermissibly utilizing excessive amounts of RFAs as a substitution for depositions and other discovery devices.

For example, the RFAs demand the officers to admit or deny information such as whether they were: (1) "present near" an intersection on June 4, 2020; (2) "within 15 feet of Defendant Lance . . . when the events depicted in DEF 327 occurred": (3) "within 10 feet" when the plaintiff was arrested; (4) observed the plaintiff "near the intersection of Washington Avenue and Fulton Street" on the incident date; (5) the officer "heard another NYPD member speak with" or "give an order or command to" plaintiff on the incident date. See Plaintiff's April 18, 2023 RFAS, annexed hereto as Exhibit A. It is simply impossible for the officers to answer these questions with a simple "admit" or "deny", and clearly, it would be more appropriate for plaintiff to utilize another discovery device to seek this information.

Furthermore, as Judge Gorenstein noted in the consolidated protest cases, plaintiffs "must limit themselves to propounding RFAs that go to issues such as authenticity of documents and basic factual matters for which they have a good faith belief that the RFA would not be unduly burdensome to investigate. . ." See Order dated January 12, 2023 In Re: New York City Policing During Summer 2020 Demonstrations, No. 20 Civ. 8924 (CM) (GWG). Here, plaintiff's requests go well beyond the limited purpose RFAs were designed for, i.e. document authentication and basic factual matters that would not be unduly burdensome to investigate. Plaintiff cannot in good faith argue that 320 RFAs served on non-party witnesses are not unduly burdensome.

Indeed, plaintiff is misusing the limited purpose of RFAs as outlined under Rule 26. "It has been recognized that Rule 36 can be misused." See Robinson v. De Niro, No. 19-CV-9156 (LJL) (KHP), 2022 U.S. Dist. LEXIS 5289, at *6 (S.D.N.Y. Jan. 11, 2022). "[W]here requests for admission are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding to the requests." See Robinson at 6 (citing Williams

v. Krieger, 61 F.R.D. 142, 144 (S.D.N.Y. 1973); see also Ross v. Shah, 2015 U.S. Dist. LEXIS 102315, 2015 WL 4648002, at *11 (N.D.N.Y. Aug. 5, 2015) (finding certain requests unenforceable because they "improperly sought the admission of the case's fundamental legal issues.")). Additionally, requests for admission are not to be used "in the hope that a party's adversary will simply concede essential elements [of the case]." River Light V., L.P. v. Lin & J. Intern., Inc., 299 F.R.D. 61, 63 (S.D.N.Y. 2014) (internal citations omitted). Furthermore, a request for admission cannot be used to require a party to admit the truth of a legal conclusion. Carver v. Bank of N.Y. Mellon, No. 15-CV-10180 (JPO) (JLC), 2018 U.S. Dist. LEXIS 164400, at *5 (S.D.N.Y. Sep. 25, 2018).

**Conclusion:**

Accordingly, defendants respectfully request that the Court issue a protective order pursuant to Rule 26(c)(1)(C) of the Federal Rules of Civil Procedure relieving them of their obligation to respond to plaintiff's RFAs dated April 18, 2023. Thank you for your consideration herein.

Respectfully submitted,

*Michael Pesin-Virovets*
Michael Pesin-Virovets
*Senior Counsel*
Special Federal Litigation Division

Cc: All Counsel of Record (via ECF)