

May 26, 2023

Hon. Vera M. Scanlon, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, New York 11201

By Electronic Filing.

    Re:    Payamps v. City of New York, 22-cv-00563

Dear Judge Scanlon:

    We are co-counsel for Plaintiff in this matter. We write in opposition to Defendants' misguided protective order motion on the Requests for Admission ("RFAs"), filed instead of obeying the Court's order at Dkt. No. 53.

    As the Court noted in the Order, "[o]n or before 5/18/2023, Defendants were to respond to requests for admission propounded by Plaintiff." Instead, they failed to. The Court excused (and implicitly vacated the automatic admissions) that failure, giving Defendants until the end of the day — relying on counsel's promise that they intended to "respond to the requests for admission" yesterday — to answer. Instead, Defendants filed a late night motion for a protective order, failing to follow the Court's rules for such a motion. Dkt. No. 54; Practice III(b).

    Defendants also fail to follow Local Rule 37.1,[1] with good reason — all of their arguments rely on mischaracterizing what the RFAs seek. The RFAs here may look voluminous, but they are really the peak of non-burden. As the Court knows Plaintiff has been scrambling endlessly to try to get Defendants to identify Doe Defendants. They are all simple facts[2] — and indeed, there are actually only 16 RFAs. They simply repeat for each person Defendants have said **might** be one of the Does. *See* **Appendix** (listing the 16 actual RFAs).

    I.    **Defendants' Motion Fails Procedurally.**

    Procedurally, Defendants' motion fails for reasons well-articulated on the very docket they primarily cite. That is, most of Defendants' motion is premised on a claim that,

---

[1] Defendants say they attached the RFAs, but failed to actually do so. Which is another reason to deny the motion under Local Rule 37.1. Nonetheless, the RFAs are attached as Exhibit 1.
[2] In this regard, Defendants' asides about legal conclusion objections and the like (Dkt. No. 54 at 4-5) are frivolous if Defendants mean them seriously. But it is obvious Defendants do not, because they do not attempt to apply that argument to a single one of the 16 RFAs.



> "If Judge Gorenstein concluded that less than 300 RFAs would require significant resources to respond to in discovery of the consolidated protest cases, then certainly in this case, which involves one plaintiff at one protest, 320 RFAs is unduly burdensome for defendants and a protective order is appropriate."

Dkt. No. 54, *citing* Order, *In Re: New York City Policing During Summer 2020 Demonstrations* ("*In re Policing*"), 20-cv-8924 (CM) (GWG), Dkt. No. 811 (SDNY, Jan. 12, 2023). But that leaves out the context. There, Defendants had already responded to a number of RFAs — and interposed objections (that the Court largely found meritless) including to burden. But before that, the Court explicitly rejected the argument Defendants make now — in **exactly** the same posture (that is, a late night, last minute protective order motion). Just like here, the City failed to follow the Court's procedures. Just like here, the City failed to make a specified burden argument. So just like here, "The Court [should not be] not considering the request for a protective order or the merits of any burdensomeness arguments in [the] letter," because the City failed to follow the Court's rules. Memo Endorsement, *In re Policing,* Dkt. No. 626 at 7 (SDNY, June 29, 2022). But the request also fails on the merits, because a protective order is not the proper response. As Judge Gorenstein explained:

> "The City must follow the procedure outlined in Fed. R. Civ. P. 36, which is not in and of itself burdensome even for 286 requests. In the Court's view, Rule 36 merely requires the City to either answer or object. Nothing stops the City from objecting to groups of requests for admission on grounds of burdensomeness or any other valid ground. No argument need be (or should be) stated in the response. The City does not need to move for a protective order (though such a motion is permitted if there has been compliance with paragraph 2.A). If plaintiffs want to challenge any aspect of the City's response, they may seek to make a motion under Fed. R. Civ. P. 36(a)(6) but only after following the process required by paragraph 2.A
>
> As to the request for an extension of the time to answer requests to which there is no objection, the City does not say how many such requests there are or describe why more time is needed. **The Court rejects any argument that the City's obligation to respond to such RFA's should be tied to a potential future ruling on any unresolved burdensomeness or other objections.**

*Id* (emphasis added). Since the City's entire burden argument is based on *In re Policing*, that context leaves the City without a basis to argue the Court should do something different here.

## II.     Defendants' Merits Objections Are Baseless.

On the merits, in the first instance, the Court directed Defendants must make a good cause showing to avoid responding. Dkt. No. 53 at 4. They failed to do so, do not explain how a last minute protective order motion — which they could have made at **any** time before their self-set deadline (after a different eleventh hour extension request) — is good cause.

Beyond that, Defendants' objections border on frivolous — for reasons explained in their own centerpiece case.

COHEN&GREEN                                                                                                          Page 2 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



     Defendants' chief complaint is that "plaintiff's RFAs are only directed at nonparty witnesses as none of the officers who are referenced in plaintiff's RFAs are currently defendants in this action." Dkt. No. 54 at 2-3 ("plaintiff's 320 RFAs all seek admissions from non-party witnesses"). Wrong. The RFAs are directed at "Defendants." Ex. 1 at 1. And the people the RFAs seek information **about** are all City employees. As Judge Gorenstein explained to the City in *In re Policing:*

> Perhaps relatedly, the City argues that some RFAs require information that is in the hands of "third parties." Docket # 790 at 8 (citing RFA 219). **But the fact that an RFA requires information from a third party to be answered does not make the RFA objectionable.** If the City is alluding in some instances to whether or not RFA can be answered following a "reasonable inquiry," the City should say as much. The Court cautions, however, that the mere fact that a response requires information from a third party does not make an RFA objectionable. Some information from a third party is readily available, even if some is not.

*In re Policing,* Dkt. No. 811 at 3 (emphasis added). So too here.

     Moreover, that is simply the standard for third parties **generally**. But all the people the RFAs seek information about are not random third parties, but instead "agents, employees, servants, enlisted or other personnel" of the City, who the City **must** inquire of to comply with Rule 36. *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992); *see also, Diederich v Dept. of Army*, 132 FRD 614, 619 (SDNY 1990) (same). There is no basis in the rules for a corporation to refuse to ask questions of its employees — and Defendants do not cite a single case about employees, because that is not how any of this works.

     Further, a party may not refuse to answer an RFA for lack of knowledge without representing specifically that they have conducted an investigation, again, as Defendants' own centerpiece case explains, had they read it more carefully. *See In re Policing,* Dkt. No. 811 at 3. Each subject of each RFA is unquestionably a person within the City's control, and the City has a duty to inquire of its "agents, employees, servants, enlisted or other personnel" to find out what **they** know. 143 F.R.D. at 548. There is no basis in the rules to refuse to do so.

     Likewise, the actual burden of answering **these** specific RFAs should theoretically be negligible — which is both a basis to deny the motion on its merits, and another reason that a preemptive motion for a protective order, as noted above, is improper.

     As the Court knows, Plaintiff is using these RFAs to investigate the Doe officers, in part because of the endless delays by Defendants in that process — including their failure to interview officers when directed to do so. However, a quick look at what the RFAs seek to confirm shows that, to the extent Defendants are asserting they do not have the answers ready to hand, they are affirmatively asserting their investigation falls well below what they promised Plaintiff and the Court. That is, Plaintiff is asking:

- Who was on duty and present at the protest (RFAs 1-2[3]);

---

[3] This numbering omits the repeated versions of the same RFA for each person Defendants identified as a potential Doe.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



- How far away people were from Plaintiff (RFAs 3-4);
- Who observed and spoke to or about Plaintiff (RFAs 5-6, 10, 16);
- Who gave orders, or heard those orders (RFAs 7 and 11); and
- Who used force on Plaintiff, or observed and/or had knowledge of that force (RFAs 8-9, 12-15).

If Defendants' interviews did not result in the answers to these basic questions, there is a significantly bigger problem here than Defendants' failure to answer RFAs.  Indeed, if Defendants are admitting they do not have answers to these questions, perhaps some inquiry into what the contents of Defendants interviews actually were is warranted.  But to the present point, as the Court can see from the Appendix, there is no serious argument these request seek anything other than single facts, well within the scope of an easy investigation, all of which the City **theoretically** already has the answers to.[4]

We thank the Court for its time.

Respectfully submitted,

/s/
_____
Jessica Massimi
   *Pronouns: She/Her*
Remy Green
   *Pronouns/Honorific:  they, them / Mx.*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by ECF.

---

[4] And again, all Defendants say about good cause is "the sheer number of responses defendants would have to prepare creates an undue burden."  Dkt. No. 54 at 3.  Since the main case they cite about this, read in its procedural context, literally says the opposite — "The City must follow the procedure outlined in Fed. R. Civ. P. 36, which is not in and of itself burdensome even for 286 requests" (*In re Policing,* Dkt. No. 626 at 7) — good cause is lacking.  The RFAs in *In re Policing* were very detailed, and the Court was **also** grappling with the burden to the City caused by the fact that its prior lead attorney and senior counsel — and therefore institutional memory about the case's facts — was dismissed after being caught forging documents to mislead the Court, leaving the active attorneys in the case with a less than ideal knowledge base.

   Page 4 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com


## APPENDIX:  Requests for Admission

The RFAs served (Exhibit 1) are an identical set of 16, that repeat for each of the possible people involved in Plaintiff's assault.  The text of the requests, with names omitted, is:

1. [NAME] was on duty working a shift as an NYPD member on June 4, 2020 when the events depicted in DEF 327 occurred.

2. [NAME] was present near the intersection of Washington Avenue and Fulton Street in Brooklyn, New York on June 4, 2020.

3. [NAME] was within 15 feet of Defendant Lance near the intersection of Washington Avenue and Fulton Street in Brooklyn, New York when the events depicted in DEF 327 occurred on June 4, 2020.

4. [NAME] was within 10 feet of Plaintiff when he was arrested near the intersection of Washington Avenue and Fulton Street in Brooklyn, New York when Plaintiff was arrested on June 4, 2020.

5. [NAME] observed Kedwin Payamps near the intersection of Washington Avenue and Fulton Street in Brooklyn, New York on June 4, 2020.

6. [NAME] spoke with Kedwin Payamps on June 4, 2020.

7. [NAME] gave an order or command to Kedwin Payamps on June 4, 2020.

8. [NAME] physically touched Kedwin Payamps on June 4, 2020.

9. [NAME] used force on Kedwin Payamps on June 4, 2020.

10. [NAME] heard another NYPD member speak with Kedwin Payamps on June 4, 2020.

11. [NAME] heard another NYPD member give an order or command to Kedwin Payamps on June 4, 2020.

12. [NAME] observed another NYPD member touch Kedwin Payamps on June 4, 2020.

13. [NAME] observed another NYPD member use force on Kedwin Payamps on June 4, 2020.

14. [NAME] has Personal Knowledge related to a use of force against Kedwin Payamps on June 4, 2020.

15. [NAME] received information from another person regarding NYPD use of force on Kedwin Payamps on June 4, 2020.

COHEN&GREEN                                                                                                             Page 5 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



16.     [NAME] received information from another person regarding NYPD interactions with Kedwin Payamps on June 4, 2020

COHEN&GREEN                                                                                                           Page 6 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com