

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**T**HE **C**ITY OF **N**EW **Y**ORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, N.Y. 10007

**MICHAEL PESIN-VIROVETS**
*Senior Counsel*
Office: (212) 356-2617
Mobile: (646) 596-0583
Email: mpvirove@law.nyc.gov

June 2, 2023

**BY ECF**
Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>Payamps v. City of New York, et al.</u>
             22-CV-00563 (AMD) (VMS)

Your Honor:

      I am a Senior Counsel in the Office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and the attorney representing defendants the City of New York ("City"), Mayor Bill de Blasio, Commissioner Dermot Shea, NYPD Chief of Department Terence Monahan, Police Officer Daniel Auguste, Police Officer Corey Johnson, and Inspector Jesse Lance (collectively "defendants") in the above-referenced matter. Defendants submit this letter jointly with plaintiff's counsel pursuant to Your Honor's Order, dated May 25, 2023, directing the parties to inform the Court by joint letter as to whether disputes pertaining to outstanding discovery remain. As discussed below, from Defendants' perspective, there is one outstanding discovery issue, the production of Defendant Lance's personnel file, which the undersigned has not yet in received. Accordingly, and in light of the current discovery deadline of July 30, 2023, defendants request additional time to obtain and produce this information to plaintiff and assures the Court that once it is received, it will be produced to plaintiff.  Plaintiff's counsel does not consent to this request and asks that all outstanding discovery be produced immediately.

      As Your Honor likely recalls, on May 25, 2023, the Court Ordered counsel for the parties to meet and confer on the four outstanding discovery items: the names of incident commanders and legal bureau personnel, the names of persons handling plaintiff's arrest paperwork and authorizing the issuance of a summon for plaintiff's arrest, the metadata and audit trails for body

cameras, and the disciplinary history and personnel file for Defendant Lance.  On June 2, 2023, counsel for the parties met and conferred on these issues and will address each below.

## Plaintiff's Position

Plaintiff notes that Defendants first sent a draft of this letter, despite repeated requests, at 4:57 p.m. on Friday, June 2, 2023 (e.g., the date of the deadline).  At that point in the day, the attorney primarily handling this case (as she told Defendants repeatedly) had childcare obligations and was not able to draft a response, so another attorney — one who handled audit trail and other AXON related body camera discovery in the consolidated protest litigation — prepared the position statement in the "Metadata and Audit Trail" section below, and otherwise Plaintiff has not reviewed this letter.  Additionally, we note that at least that section is inconsistent with the discussions the parties had during multiple meetings today.

## The Names of Incident Commanders and Legal Bureau Personnel

With respect to names of incident commanders and legal bureau personnel, the undersigned has been made aware, and the same was communicated to counsel, that, upon information and belief, and review of the Legal Bureau Roster for June 4, 2020, no legal bureau personnel were assigned to the protest on June 4, 2020 at Fulton Street and Washington Avenue.

Additionally, with respect to the names of incident commanders present at this location, the undersigned received information from the NYPD, and the same was communicated to counsel, that no incident commander was assigned to the June 4, 2020 protest in the vicinity of plaintiff's arrest location. Our office previously produced a list of all incident commanders assigned to various protests throughout the City from May 29, 2020 until June 20, 2020 in the consolidated protest cases. This list, while referencing protests that occurred in Brooklyn on June 4, 2020, does not identify the protest at which plaintiff was arrested. Moreover, none of the protests identified in this list for June 4, 2020 in Brooklyn started later than 7:00pm. Based on plaintiff's summons, it is believed he was arrested at approximately 10:12pm. Thus, it is believed that no incident commander was assigned or designated for the protest at which plaintiff was arrested.

## The Names of Persons Handling Plaintiff's Arrest Paperwork and Authorizing the Issuance of a Summons for Plaintiff's Arrest

With respect to the request for information pertaining to the person authorizing the issuance of a summons to plaintiff on the incident date, the following was communicated to plaintiff's counsel today: given that plaintiff was issued a C-summons on June 4, 2020 (so an "arrest report" was not issued), a supervisor's approval to issue the C-Summons was not required. Accordingly, there is no responsive information to the request for the name of the person who authorized the issuance of plaintiff's summons.

With respect to the names of the persons handling Plaintiff's arrest paperwork,  plaintiff's counsel was similarly informed by the undersigned that, upon information and belief, there were only two documents prepared in connection with plaintiff's arrest—the c-summons and the medical treatment of prisoner form.  Both of those documents were produced to plaintiff on

September 20, 2022 as part of defendants' initial disclosures.  Upon information and belief, the individuals involved in processing this paperwork was the arresting officer, Police Officer Daniel Auguste, and Sergeant Jonathan Valentin of the 84 Precinct, who approved the medical treatment of prisoner form.

**The Metadata and Audit Trails for Body Cameras**

With respect to plaintiff's request for the production of audit trails and metadata for the BWC of all NYPD members who were present at the protest, the parties conferred and defendants agreed to produce to plaintiff a more limited universe of information concerning this request.  To that end, it was agreed defendants would produce the audit trails for the individual defendants and witnesses officers who were identified by the CCRB (24 officers in total).

To that end, plaintiff's counsel was further advised during the meet and confer that, upon information and belief,  on June 4, 2020 not all body worn cameras utilized by the NYPD generated audit trials.  More specifically, officers who were equipped with the older body worn camera model, known as Vievu, did not generate corresponding audit trails[1]. Officers equipped with AXON body worn cameras, however, generate a corresponding audit trail.  Additionally, upon information and belief, of the twenty-four officers  identified by CCRB, only five were equipped with AXON body cameras and therefore generated audit trails[2]. Accordingly, today, Defendants produced to Plaintiff a copy of the audit trails associated with these five officers for that day.

Finally,  with respect  to the demand for metadata, according to the NYPD, body worn camera metadata pertains to data associated with an actual video recording. Accordingly, because there are no body worn camera videos to produce with respect to this incident there is no corresponding metadata to produce either.

**Plaintiff's Position:**

Defendants' position is not consistent with their representations during the day, but also (1) is not internally consistent and (2) nor is it consistent with either AXON documentation or the City's representations  about its bodyworn cameras made during the extensive discovery — involving representatives with personal knowledge from the NYPD — in the consolidated protest litigation in *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM)(GWG) ("*In re Policing*").  To start, VieVu is owned by AXON. That acquisition happened

---

[1] According to the NYPD, the following officers were equipped with Vievu body worn cameras on June 4, 2020: Kitwane Lewis, Daniel Auguste, Matthew Erdman, Kevin Forrester, Corey Johnson, Luis Alicea, Clifford Perch, William Glynn, Ryon Malcolm, Jason Reisgerzog, Nathaniel Lester, and Jorge Ramos.

[2] According to the NYPD, the following officers **did not** have body worn cameras assigned to them on June 4, 2020: Jesse Lance, Janelle Nerette, Danny Murria, Randy Shapiro, Kenneth Noonan, and Kevin Lynch.

in 2018.[3]   And according to the Axon Evidence User and Administrator Reference Guide (the "Guide"),[4] VieVu cameras function with Evidence.com.  *See* Guide at 316.  While we do not have the City's contract with AXON, it is all but certain the City — like other purchasers — had a data migration to ensure not only was current data on the evidence.com platform, but legacy data was migrated.  *See, for example*, Exhibit 1 at 34 (a sample Agency stock agreement, current as of 2020, including data migration services for VieVu products.[5]   Audit Trail logs are ***not*** created by the camera itself.   Rather, they are created by evidence.com itself, and logs actions taken ***on evidence.com***.  *See* Guide at 339-341.

Moreover, over the course of extensive litigation over BWC audit trails in *In re Policing*, while there were many disputes, the City did not make this claim about VieVu cameras even once.  While it certainly may be that the City hid this issue in that case, it appears much more likely that something is being lost in translation.  Indeed, throughout the *In re Policing* litigation, claims that the City's attorneys made about evidence.com capabilities often proved untrue as soon as a person with personal knowledge about the technology was in the room.  *See, e.g., In re Policing*, Dkt. No. 438-5 at 23:21-26:25 (among other things, after the City initially incorrectly — and inconsistently with the Guide — claimed bulk downloading audit trails was impossible, reading from an email from a City lawyer sent after such a meet and confer, saying, "I have spoken with the clients who have agreed that they would permit bulk downloads in these circumstances, and so we will withdraw the burdensomeness objection to the extent it was based on having to download each audit trail individually"); *cf. also, id.,* Dkt. No. 385 (". It is unclear why Defendants went from being unable to produce these logs to being able to readily provide them the next morning").

Finally, it is telling that Defendants simply use the phrase "upon information and belief" to describe their claim.   "Upon information and belief" means that the person writing it lacks personal knowledge.  *Cf, e.g., Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 U.S. Dist. LEXIS 61710, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) ("Though a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded."). And that's just the problem — Defendants' counsel has provided no reliable reason to think it's true that somehow, the City had countless cameras that lacked the basic ability to show chain of custody (which is what the audit trails do).  Nor is there any reason to think that evidence.com does not have support for legacy cameras when its own manual says exactly the opposite.

---

[3] *See* PR Newswire, *Axon Acquires VIEVU Camera Subsidiary from The Safariland Group and Announces Strategic Long-Term Holster Partnership* (May 8, 2018).

[4] Available online at:
https://public.evidence.com/help/pdfs/latest/EVIDENCE.com+Administrator+Reference+Guide.pdf

[5] It is also important to note, at least from what information is public, that the City's migration from VieVu appeared to be spurred, in part, by cameras exploding.  *See,* Sidney Fussell, *A Rare Issue Is Causing Police Body Cameras to Explode,* Atlantic (Oct. 18, 2018).  So the claim that VieVu units are still in service seems, at the least, suspect, without more.

So, we think the solution is that the Court direct the City to produce a person with personal knowledge of evidence.com and body worn camera technology, as well as the specifics of any claims Defendants are making, for a meeting, so the parties can actually get to the bottom of this issue.[6] Defendants' counsel clearly does not have the full story here, and figuring that out — with a draft, inconsistent with the discussions actually held and sent at 5 pm on the Friday the letter was due — is not possible before midnight tonight.

**The Disciplinary History and Personnel File for Defendant NYPD Inspector Jesse Lance.**

Finally, today, defendants produced to plaintiff the IAB resume and CPI associated with defendant Lance. The undersigned also informed counsel that we are not yet in possession of the personnel file for Inspector Lance, but that once it is received, it will be produced.

Accordingly, the only outstanding discovery issues remaining includes the production of Inspector Lance's personnel file. In light of the July 30, 2023 discovery deadline, Defendants respectfully request additional time to provide this information to plaintiff's counsel as it is not yet in receipt. It is our hope to have this information within the next 30 days.

The parties thank the Court for its consideration of these requests.

By:  /s/ *Michael Pesin-Virovets*
　　　Michael Pesin-Virovets
　　　*Senior Counsel*


cc: **By ECF**
Elena Louisa Cohen
Cohen Green PLLC
*Attorney for Plaintiff*

Remy Green
Cohen & Green
*Attorney for Plaintiff*

Jessica S. Massimi
99 Wall Street, Ste. 1264
New York, NY 10005
*Attorney for Plaintiff*

Gideon Orion Oliver
Attorney at Law

---

[6] The alternative is likely a 30(b)(6) deposition on this topic.

277 Broadway
Suite 1501
New York, NY 10007
*Attorney for Plaintiff*